UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | Case No. 23-10375-JGR |
| | ) | |
| SELAH MOUNTAIN PHARMACY, LLC | ) | |
| | ) | |
| | ) | Chapter 11, Subchapter V |
| Debtor. | ) | |
| | ) | |

**MOTION FOR AUTHORITY TO USE CASH COLLATERAL**

The Debtor and Debtor in Possession, Selah Mountain Pharmacy, LLC ("Debtor"), by and through its attorneys, Kutner Brinen Dickey Riley, P.C., moves the Court pursuant to 11 U.S.C. § 363(c)(2) and Bankruptcy Rules 4001(b) and 9014 for entry of an order authorizing the Debtor's use of cash collateral, setting a final hearing on the use of cash collateral, and providing adequate protection to properly perfected secured creditors, and as grounds therefor states as follows:

**BACKGROUND**

1. The Debtor filed its Voluntary Petition pursuant to Chapter 11, Subchapter V, of the Bankruptcy Code on February 3, 2023 ("Petition Date"). The Debtor remains a debtor in possession and is in operation of its business pursuant to 11 U.S.C. §§ 1107, 1108 and 1182.

2. The Debtor is a Colorado limited liability company that owns and operates a pharmacy and provides, among other services, community retail and compounding pharmacy, medication, and durable medical equipment via delivery services.

*A. Parties with Interests in Accounts and Accounts Receivables*

3. Pre-petition, on or about September 16, 2021, the Debtor entered into a Forward Purchase Agreement (Fixed ACH Delivery), Security Agreement, and Guaranty (together with all amendments thereto, the "Loan Documents") with Strategic Funding Source, Inc. d/b/a Kapitus LLC ("Kapitus") for a loan in the original principal balance of $150,000 structured as a purchase of future receivables. The Loan Documents are attached hereto as Exhibit A.

4. In accordance with the Security Agreement, the Debtor granted Kapitus a secured interest in substantially all of the Debtor's assets, including its inventory, equipment, accounts, deposit accounts, and accounts receivables.

5. Upon information and belief, Kapitus perfected its interest by filing a UCC-1 financing statement with the Colorado Secretary of State through C T Corporation System as its representative on September 24, 2021, Document No. 20212093436. The Debtor's books and records reflect that Kapitus was owed approximately at $193,560 as of the Petition Date.

6. Pre-petition, on or about September 8, 2022, the Debtor also entered into a Future Receivables Sale and Purchase Agreement (together with all attachments thereto, the "Fox Loan Documents") with Fox Capital Group, Inc. ("Fox") for a loan in the original principal balance of $70,000 structured as a sale of future receivables. Pursuant to the Fox Loan Documents, the Debtor granted a security interest in substantially all of its assets to Fox behind the secured interest of Kapitus.

7. Upon information and belief, Fox perfected its security interest by filing a UCC-1 financing statement with the Colorado Secretary of State as "UCC Filer 6269" September 12, 2022, Document No. 20222093217. The Debtor's books and records reflect that Fox was owed approximately $65,294 as of the Petition Date.

8. In addition to loans with Kapitus and Fox, the Debtor also entered into similarly styled loans with ROC Funding Group ("ROC") for a loan in the original principal amount of $30,000 and with Emerald Group Holdings, LLC d/b/a VitalCap Fund ("VitalCap") for a loan in the original principal amount of $125,000. The loans with ROC and VitalCap were similarly structured as a sale of future receivables, and similarly purported to grant a security interest in substantially all of the Debtor's assets.

9. Upon information and belief, ROC and VitalCap perfected their respective security interests with the filing of UCC-1 financing statements on November 2, 2022 and December 29, 2022. As of the Petition Date, ROC was owed approximately $24,580 and VitalCap was owed approximately $27,083.

## B. Assets on the Date of Filing

10. The Debtor's primary assets are its inventory and its accounts receivable. On the Petition Date, the Debtor had total receivables in the amount of $618,453.53, of which approximately $233,829.73 is collectible, as set forth below:

| Receivable Period | Amount | Collectible amount |
|---|---|---|
| 1-30 days | $1,923.65[1] | $1,923.65 |

---

[1] Receivables are based on amounts billed.

| 31-60 days | $83,461.28 | $83,461.28 |
| 61-90 days | $93,734.50 | $93,734.50 |
| 91-120 days | $217,649.49 | $43,529.89 |
| 121+ days | $223,608.26 | $11,180.41 |
| **Total** | **$618,453.53** | **$233,829.73** |

11. On the Petition Date, the Debtor also had cash in account with a balance of $252.31

12. The Debtor is replacing its cash in account and receivables in the ordinary course of business.

13. The Debtor must use cash collateral to continue its business operations post-petition and maintain its inventory. If the Debtor is not able to use cash collateral to continue to operate in the ordinary course of business, the Debtor will be forced to cease operations, resulting in the Debtor losing its contracts and patients turning to other sources to fulfill their prescriptions.

14. Unless the Debtor is authorized to use cash collateral, the Debtor will suffer irreparable harm and injury from the inability to maintain operations.

15. The Debtor is replacing its accounts, cash, and inventory in the ordinary course of its operations on a daily basis.

## RELIEF REQUESTED

16. The Debtor plans to continue operation of its business throughout the Chapter 11 case and propose a Plan of Reorganization which provides for the continuation of the Debtor's business. It is only through a Plan that unsecured creditors will see a recovery on account of their claims.

17. In order to pay necessary operating expenses, the Debtor must immediately use cash collateral in which the Kapitus, Fox, ROC, and VitalCap (collectively the "Secured Creditors") may have an interest. The Debtor proposes to use cash collateral on an interim basis until such time as the Court schedules a final hearing on the use of cash collateral. At the final hearing, the Debtor will seek relief to use cash collateral during the term of this Chapter 11 proceeding.

18. The majority of the Debtor's revenues and available cash are derived from its ongoing sales. Without the use of cash collateral, the Debtor will have insufficient funding for business operations. Therefore, the Debtor's use of cash collateral during the interim period is

necessary to avoid immediate and irreparable harm to the estate. Without the use of cash collateral, the Debtor will not be able to pay employees, rent, utilities, replacement inventory and other costs necessary to ongoing operations.

19. The Debtor will be replacing its accounts, cash, and cash equivalents in the course of its daily operations and therefore the collateral base will remain stable and will improve over time. The Debtor's cash position is projected to be positive after meeting expenses during the term of the Chapter 11 case.

20. In order to provide adequate protection for the Debtor's use of cash collateral to secured creditors, the Debtor has proposed adequate protection for the Secured Creditors or any other creditor with a lien on cash collateral as set forth below. The proposal provides the following treatment on account of cash collateral:

   a. The Debtor will provide the Secured Creditors with a post-petition lien on all post-petition accounts receivable and contracts and income derived from the operation of the business and assets, to the extent that the use of the cash results in a decrease in the value of the Secured Creditors' interest in the collateral pursuant to 11 U.S.C. § 361(2). All replacement liens will hold the same relative priority to assets as did the pre-petition liens;

   b. The Debtor will only use cash collateral in accordance with the Budget attached to this Motion as Exhibit B subject to a deviation on line item expenses not to exceed 15% without the prior agreement of the Secured Creditors or an order of the Court;

   c. The Debtor will keep all of the Secured Creditors' collateral fully insured;

   d. The Debtor will provide the Secured Creditors with a complete accounting, on a monthly basis, of all revenue, expenditures, and collections through the filing of the Debtor's Monthly Operating Reports; and

   e. The Debtor will maintain in good repair all of the Secured Creditors' collateral.

21. Should the Debtor default in the provision of adequate protection, the Debtor's approved use of cash collateral will cease and the Secured Creditors will have the opportunity to obtain further relief from this Court.

22. Since most of the secured creditors with a lien on cash collateral will be able to collect from ongoing contract revenues and since those revenues will be cut off if the Debtor is not allowed to continue in business performing on its contracts, the only way the bulk of the receivable

revenue will be collected is through continued operations. Continued operations require the ongoing use of cash collateral. By way of example, if the Debtor stops work on a project where there is an account receivable, the Debtor will likely lose the right to collect the receivable if it is no longer able to perform on the underlying contract. The general contractor will exercise its right to obtain substitute performance from an alternate subcontractor at what will inevitably be a higher price and deduct all costs and expenses from monies due the Debtor.

23. The Debtor's request to use cash collateral is made with a complete reservation of rights of secured creditors to their various claims and lien positions in and to the Debtor's assets.

24. Approval of the Debtor's use of cash collateral in accordance with this Motion is, on an interim basis and a final basis, in the best interest of the Debtor, its creditors and the estate as it will allow the Debtor to maintain its ongoing business operations, allow the Debtor to generate revenue, and provide the Debtor with an opportunity to propose a meaningful Plan.

### RELIEF REQUESTED ON AN INTERIM EMERGENCY BASIS

25. Without the immediate use of cash collateral, the Debtor will not be able to fund ongoing business operations. The Debtor is filing a separate motion requesting an expedited entry of an order approving the interim use of Cash Collateral pursuant to this Motion.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order, authorizing the Debtor's use of cash collateral in accordance with this Motion, authorize the Debtor to provide adequate protection to the secured creditors with an interest in cash collateral in the form of that set forth herein, and for such further and additional relief as to the Court may appear proper.

DATED: February 8, 2023     Respectfully submitted,

By: /s/ Keri L. Riley
Keri L. Riley, #47605
**KUTNER BRINEN DICKEY RILEY, P.C.**
1660 Lincoln Street, Suite 1720
Denver, CO 80264
Telephone: (303) 832-2400
E-mail: klr@kutnerlaw.com